## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**RICHARD D. FLUKER, JR.**                               **CIVIL ACTION**

**VERSUS**                                                             **NO.  08-5121**

**TIM WILKINSON**                                          **SECTION "F"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Richard D. Fluker, Jr. ("Fluker"), is an inmate incarcerated in the Winn Correctional Center in Winnfield, Louisiana.[2]  Fluker was charged by bill of information on October 1, 2003, in Jefferson Parish as a felon in possession of a weapon.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 10/1/03.

The record reflects that, on August 22, 2003, Agent Lisa Thornton and Deputy Thelma Hill were conducting surveillance to identify individuals selling narcotics to undercover agents.[4]  The two went to the area of 209 Glendella Avenue after receiving a lead from an undercover agent, who had just purchased narcotics from a black female.  The officers observed a black female, who met the description given, while she was engaged in a narcotics transaction.  Thornton and Hill exited their unit, and the black female ran into the house at 209 Glendella Avenue where Fluker lived.

Thornton  and Hill went to the house, knocked on the door, and announced their presence.  Moments later, Fluker opened the door and told the officers that he had been home all day.  He denied that someone had just run into the house.  While the door was opened, the officers saw a plate of marijuana on the coffee table in the living room.  The officers had Fluker step outside, but he later returned inside the house.  Agent Thornton conducted a background check.  She discovered that Fluker was a convicted felon.

Agent Thornton then went to the rear of the house to see if anyone else was inside.  She also contacted Sergeant Joseph Williams to inform him of the situation.  He and other officers arrived to secure the scene.  After locating a man and a woman in the back of the house, Sergeant Williams asked Fluker for consent to search the house and he signed a consent form.

By the time the police re-entered the residence, the plate of marijuana was gone.  After being questioned about the marijuana, Fluker admitted that he moved it and put it under the sofa.  The police located the marijuana and a loaded .38 caliber gun under the sofa.  Agent Thornton determined that the gun was not registered to Fluker or any other occupant in the house.

---

[4]St. Rec. Vol. 1 of 3, 5th Cir. Opinion, 05-KA-172, p. 3, 10/6/05; *State v. Fluker*, 912 So.2d 724 (La. App. 5th Cir. 2005) (Table).

On October 6, 2003, Fluker, who was released on bond, failed to appear for a hearing before the state trial court.[5]  The Court that day issued an attachment and Fluker was later brought before the Court on November 26, 2003.[6]  The state trial court later sentenced him to serve six months for contempt of court.[7]

Fluker was brought to trial before a six person jury on June 29, 2004, and was found guilty as charged.[8]  At a hearing held, July 21, 2004, the Trial Court denied Fluker's counsel-filed motion for new trial.[9]  The Court also sentenced Fluker to serve 12 years and 6 months in prison without benefit of parole, probation, or suspension of sentence, and assessed a fine of $1,000.[10]  The Court also denied counsel's motion to reconsider the sentence.[11]

On direct appeal, Fluker's counsel raised three grounds for relief:[12] (1) the evidence was insufficient to support the conviction; (2) the Trial Court imposed an illegally excessive sentence; and (3) a review for errors patent is requested.  The Louisiana Fifth Circuit affirmed his conviction

---

[5]St. Rec. Vol. 1 of 3, Minute Entry, 10/6/03.

[6]St. Rec. Vol. 1 of 3, Attachment, 10/6/03; Minute Entry, 11/26/03.

[7]St. Rec. Vol. 1 of 3, Minute Entry, 1/20/04.

[8]St. Rec. Vol. 1 of 3, Trial Minutes, 6/29/04; Jury Verdict, 6/29/04; St. Rec. Vol. 2 of 3, Trial Transcript, 6/29/04.

[9]St. Rec. Vol. 1 of 3, Sentencing Minutes, 7/21/04; Motion for New Trial, 7/21/04.

[10]Id.; St. Rec. Vol. 2 of 3, Sentencing Transcript, 7/21/04.

[11]Id.; St. Rec. Vol. 1 of 3, Motion to Reconsider Sentence, 7/21/04.

[12]St. Rec. Vol. 2 of 3, Appeal Brief, 05-KA-172, 3/14/05.

and sentence on October 6, 2005, finding no merit to his claims and no errors on the face of the record.[13]

On November 17, 2005, Fluker submitted a motion seeking an extension of time to file a writ application with the Louisiana Supreme Court.[14]  The clerk of the Louisiana Supreme Court recognized the filed pleading on November 29, 2005.[15]  In the motion, Fluker alleged that he needed additional time to file his post-appeal writ application, because after Hurricane Katrina hit the New Orleans area on August 29, 2005, he was transferred from the Jefferson Parish Community Correctional Center to Union Parish Prison and then to Forcht/Wade Correctional Center.[16]  The record is not clear as to the disposition, if any, of the motion by the Louisiana Supreme Court.

Nevertheless, on or about December 7, 2005, Fluker mailed an undated writ application to the Louisiana Supreme Court in the care of the clerk of the Louisiana First Circuit Court of Appeal.[17]  The pleading was received there on December 12, 2005.[18]  The writ application was eventually file-stamped by the clerk of the Louisiana Supreme Court on March 30, 2006, with a second cover sheet signed by Fluker on March 20, 2006.[19]  Fluker raised therein four grounds for relief: (1) the evidence was insufficient to support the conviction; (2) the Trial Court imposed an illegally excessive

---

[13]St. Rec. Vol. 1 of 3, 5th Cir. Opinion, 05-KA-172, 10/6/05; *State v. Fluker*, 912 So.2d at 724.

[14]The State apparently concedes this in its opposition.  St. Rec. Vol. 1 of 3, Copy of Motion for Extension of Time (copy received in Jefferson Parish on 11/29/05).

[15]St. Rec. Vol. 3 of 3, La. S. Ct. Letter, 11/29/05.

[16]St. Rec. Vol. 1 of 3, Copy of Motion for Extension of Time (copy received in Jefferson Parish on 11/29/05).

[17]St. Rec. Vol. 1 of 3, 1st Cir. Envelope, postmarked 12/7/05.

[18]*Id.*  The envelope bears a second received stamp dated December 13, 2005, which is similar to the stamp normally used by the Louisiana Supreme Court.

[19]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 06-KH-696, 3/30/06 (dated 3/20/06); St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 3/30/06 (showing postmark of 12/7/05).

sentence; (3) ineffective assistance of appellate counsel for failure to review the transcripts before filing the appeal; and (4) a review for errors patent is requested. The Louisiana Supreme Court denied the application without stated reasons on September 29, 2006.[20]

## II.   State Post-Conviction Relief

On April 5, 2007, Fluker submitted an application for post-conviction relief to the state trial court in which he raised the following grounds for relief: (1) ineffective assistance of trial counsel for not challenging his consent, for failing to address the fact that he was never the subject of the police investigation, and for failure to have the gun fingerprinted and the results brought out in court; (2) ineffective assistance of appellate counsel for failing to include additional arguments regarding the sufficiency of the evidence and for failure to challenge the constitutionality of the search. The Trial Court denied the application on May 1, 2007, finding no merit to the claims under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

On June 22, 2007, Fluker untimely[21] submitted a writ application to the Louisiana Fifth Circuit seeking review of this order.[22] The Court denied the application on July 31, 2007, finding no error in the Trial Court's Order.[23]

---

[20]*State ex rel. Fluker v. State*, 937 So.2d 854 (La. 2006); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2006-KH-0696, 9/29/06.

[21]La. App. R. 4-3 allows 30 days for a party to file a writ application seeking review of a trial court order. Applying the appropriate mailbox rule, Fluker did not sign his writ application until June 22, 2007, which was 21 days after the proscribed time period passed.

[22]St. Rec. Vol. 1 of 3, 5th Cir. Writ Application, 07-KH-487, 7/3/07 (showing postmark of 6/22/07).

[23]St. Rec. Vol. 1 of 3, 5th Cir. Order, 07-KH-487, 7/31/07.

On August 15, 2007, Fluker untimely[24] submitted an application for rehearing of this ruling.[25] The appellate court refused his application for rehearing on September 4, 2007, because he was not entitled to a rehearing under La. App. Rule 2-18.7 as applied to post-conviction writ applications by La. App. Rule 4-9.[26]

Fluker thereafter submitted an untimely[27] writ application to the Louisiana Supreme Court on September 20, 2007, seeking review of the lower courts' rulings on his post-conviction claims.[28] While that application was under review, on July 27, 2008, Fluker wrote a letter to the state trial court asking that his sentence for this conviction run concurrent with his sentence after his parole was revoked on his prior drug conviction.[29] The Trial Court construed the letter as a motion for concurrent sentences, and denied the motion as meritless on August 15, 2008.[30]  Thereafter, on

---

[24]La. App. Rule 2-18.2 provides that, in criminal proceedings, a request for rehearing shall be filed within 14 days of the rendition of the judgment.  Fluker did not sign his application for rehearing until August 15, 2007, which was one day after it should have been submitted for filing.

[25]St. Rec. Vol. 3 of 3, Application for Rehearing, 07-KH-487, dated 8/15/07.  The file-stamp date of October 11, 2007, appearing on the record copy, is that of the Louisiana Supreme Court when the pleading was submitted as an exhibit to that Court.

[26]St. Rec. Vol. 3 of 3, 5th Cir. Order, 07-KH-487, 9/4/07.

[27]La. S.Ct. R. X § 5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment or from the denial of a timely application for rehearing.  As will be discussed later, since his application for rehearing was not timely, the time runs from the denial of the underlying writ application on July 31, 2007.  The applicable mailbox rule also considers the filing date to be the date upon which the inmate presented his pleading to prison officials for mailing to the state court. See Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006); accord, Marshall v. Cain, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (mailbox rule controls under La. S. Ct. Rule X § 5).  George's application was not signed, submitted or filed within that period.

[28]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 07-KH-2005, 10/11/07 (showing postal meter of 9/25/07, dated 9/20/07); St. Rec. Vol. 1 of 3, La. S. Ct. Letter, 2007-KH-2005, 10/11/07 (showing postal meter of 9/25/07).

[29]St. Rec. Vol. 1of 3, Letter from Fluker, 8/1/08 (dated 7/27/08).

[30]St. Rec. Vol. 1 of 3, Trial Court Order, 8/15/08.

August 22, 2008, the Louisiana Supreme Court denied Fluker's prior writ application without stated reasons.[31]

## III.   Federal Petition

On December 19, 2008, the clerk of this Court filed Fluker's petition for federal habeas corpus relief, in which he raised three grounds for relief:[32] (1) the evidence was insufficient to support the conviction; (2) the trial court imposed an illegally excessive sentence; and (3) a review for errors patent is requested.

The State filed a response in opposition to Fluker's petition arguing that the federal petition was untimely filed.[33]  Fluker filed a response to the State's response insisting that his petition was timely filed.[34]

## IV.   Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[35] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on November 17, 2008.[36]  The threshold questions in habeas review under the amended

---

[31]*State ex rel. Fluker v. State*, 988 So.2d 255 (La. 2008); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2007-KH-2005, 8/22/08.

[32]Rec. Doc. No. 1.

[33]Rec. Doc. No. 9.

[34]Rec. Doc. No. 10, Motion for Objection.

[35]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[36]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000);

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

In this case, the State argues that Fluker's petition was not timely filed. The Court rejects the the limitations defense for the reasons that follow and will proceed to the merits of the claims.

## V.    Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[37]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  In this case, the finality of Fluker's conviction warrants further discussion.

### A.    Finality of Fluker's Conviction

---

*Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Fluker's petition on December 19, 2008, when pauper status was granted.  Though it was not on the required form, Fluker's signature on the pauper application submitted with his original undated pleading (received by the clerk on November 19, 2008) was dated November 17, 2008.  This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing.

[37]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

The Louisiana Fifth Circuit affirmed Fluker's conviction and sentence on October 6, 2005. Prior to that, while the appeal was pending, the New Orleans metropolitan and the entire southern region of Louisiana was devastated by the effects of Hurricanes Katrina and Rita in August and September of 2005.   In fact, the State concedes in its opposition response that the Louisiana Supreme Court itself was closed for business from August 29, 2005, through November 25, 2005, as a result of the hurricanes.[38]   This, among other matters, would have made it extraordinarily difficult for Fluker to have properly filed a writ application during that period.

Furthermore, in response to the devastation of both hurricanes, Louisiana's Governor issued three Executive Orders suspending the limitations periods applicable to Fluker's efforts to seek further review.[39]   These orders were later ratified by the Louisiana Legislature.[40]   The effect of these Executive Orders, read together, was to suspend all filing periods between August 29, 2005, and November 25, 2005.   *Cf.*, *Mitchell v. Kaiser Aluminum & Chemical Corp.*, 942 So.2d 1093 (La. App. 5th Cir. 2006).   Following this, on November 23, 2005, the Louisiana Legislature enacted La. Rev. Stat. Ann. § 9:5824, which also memorialized the effects on the legal community arising from

---

[38]Rec. Doc. No. 9, p. 7.

[39]The three Executive Orders were Nos. KBB-2005-32, KBB 2005-48, and KBB 2005-67.  *See* 2005 Executive Orders, http://doa.louisiana.gov/osr/other/2005KBBexo.htm.  In No. KBB-2005-32, the Governor, in recognizing the state of emergency caused by Hurricanes Katrina and Rita, declared the following: "All deadlines in legal proceedings, including liberative prescriptive and peremptive periods in all courts, administrative agencies, and boards are hereby suspended until at least September 25, 2005, including, but not limited to, any such deadlines set for in the following: A. Louisiana Civil Code; B. Louisiana Code of Civil Procedure; C. La. R.S. Title 9, Civil Code Ancillaries; D. La. R.S. Title 13, Courts and Judicial Procedure; E. La. R.S. Title 23, Chapter 10, Worker's Compensation; F. La. R.S. Title 40, Chapter 5 Part XXI-A, Malpractice Liability for State Services; and G. La. R.S. Title 40, Chapter 5, Part XXIII, Medical Malpractice . . . SECTION 2: This Order is effective upon signature and shall apply retroactively from Monday, August 29, 2005, through Sunday, September 25, 2005, unless amended, modified, terminated, or rescinded by the governor, or terminated by operation of law prior to such time."  Thereafter, in Executive Order No. KBB 2005-48, the Governor amended the previous order to suspend these deadlines until "at least October 25, 2005."  Finally, in Executive Order No. KBB 2005-67, the Governor extended the suspension of deadlines "until November 25, 2005."

[40]La. Rev. Stat. Ann. § 9:5821 provides in pertinent part that "[t]he action of the governor of this state in issuing Executive Orders KBB 2005-32, 48, and 67 is hereby approved, ratified, and confirmed subject to the provisions of R.S. 9:5822 through 5825."

Hurricanes Katrina and Rita.  The statute provides for a suspension of all legal delays from November 23, 2005, through June 1, 2006.[41]  *Cf. Cipriano v. Pulitzer*, 959 So.2d 558 (La. App. 4th Cir. 2007).  The legislature further provided that the extension was granted and allowed subject to review of the presiding judge based on the circumstances of the case.[42]  Under both Louisiana law and federal law, a suspension of prescription constitutes a temporary halt to its running after which it will continue to run.  *Mankowski v. United States*, 148 F.2d 143, 145 (5th Cir. 1945) ("Suspend means to interrupt, . . . to discontinue temporarily but with expectation or purpose of resumption."); *Failla v. Dynasty Distrib., Inc.*, 2006 WL 860969 at *4 n.5 (E.D. La. Mar. 24, 2006); *LeBreton v. Rabito*, 714 So.2d 1226 (La. 1998).

During this extraordinary time in this State, Fluker also filed the aforementioned motion for extension of time based on the very concerns addressed by the state government.  He was delayed and transferred from facility to facility without the ability to promptly pursue review of his appeal.

---

[41]La. Rev. Stat. Ann. § 9:5824 provides in pertinent part as follows:

B. (1) Notwithstanding the provisions of R.S. 9:5822 or 5823, a party who is domiciled within the parishes of Cameron, Orleans, Plaquemines, St. Bernard, Jefferson, or Vermilion, or whose cause of action arose within such parishes or whose attorney is domiciled within or has a law office within such parishes, may seek in any court of competent jurisdiction in this state a limited suspension and/or extension of prescription or peremption periods or other legal deadlines, beyond the termination dates provided in R.S. 9:5822 and 5823, by contradictory motion or declaratory judgment. The party seeking an additional suspension and/or extension, in accordance with the provisions of this Section, shall bear the burden of proving by a preponderance of the evidence that the motion was filed at the earliest time practicable and but for the catastrophic effects of Hurricane Katrina or Rita, the legal deadline would have been timely met. If the court grants the motion, the prescription or peremptive period or other legal deadline shall be suspended or extended for a period not to exceed thirty days from the date of the granting of the motion. This limited suspension or extension shall terminate on June 1, 2006, and any right, claim, or action which would have expired during the time period of January 4, 2006, through May 31, 2006, shall lapse on June 1, 2006.

(2) The failure to file the motion authorized in Paragraph (1) of this Subsection shall not preclude a party from using the basis of the motion as a defense to an exception of prescription.

[42]This federal court recognized its own suspension of the filing deadlines.  *See* E.D. La. Order, signed September 1, 2005 (hard copy maintained in the office of the clerk of court).  This suspension was terminated on November 25, 2005, except for good cause shown.  *See* E.D. La. Order, signed November 3, 2005 (hard copy maintained in the office of the clerk of court).

Although it is not clear whether the extension was granted, the pleading was submitted and recognized by the Louisiana Supreme Court clerk as having been filed.  The Court further notes that Fluker's writ application was eventually file-stamped by the clerk of that court with the extended suspension period authorized by the state legislature.

Considering all of the foregoing, whether that be under statutory tolling or equitable tolling, and without any contrary declaration by the Louisiana Supreme Court, this Court will consider the period in which Fluker had to file his Louisiana Supreme Court writ application to have been suspended.  Thus, his 2006 writ application is considered to have been timely submitted to the Louisiana Supreme Court for filing no later than December 7, 2005, during the suspension period recognized by the State.

Having resolved this, the finality of Fluker's conviction can be determined.  The Louisiana Supreme Court denied his post-appeal writ application on September 29, 2006.  His conviction became final 90-days later, on Thursday, December 28, 2006, when he did not file a writ of certiorari with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).  Under the plain language of § 2244, Fluker had until December 28, 2007, to file a timely federal application for habeas corpus relief and he failed to do so.  Thus, literal application of the statute would bar Fluker's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

**B.**     **Statutory Tolling**

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending

shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes "'until further appellate review is unavailable under [Louisiana's] procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same

substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies are not other collateral review for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *Cf. Gonzales v. Wilkinson*, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in receiving transcript copies does not warrant statutory or equitable tolling where motion based on the transcript was not timely or properly filed under state law).

In Fluker's case, the AEDPA filing period began to run on December 29, 2006, the day after his conviction became final. The period ran for 97 days, until April 5, 2007, when Fluker submitted his application for post-conviction relief to the state trial court. This filing remained pending until May 31, 2007, which was 30 days after the Trial Court ruled and Fluker did not timely file for review in the Louisiana Fifth Circuit. An additional 21 days ran against Fluker, until June 22, 2007, when he finally submitted his untimely writ application to the Louisiana Fifth Circuit for filing.[43]

---

[43]*See Grillette v. Warden, Winn Corr. Ctr.*, 372 F.3d 765 (5th Cir. 2004) (finding that even though not timely filed under La. App. Rule 4-3, Louisiana circuit court writ application is still considered pending for tolling purposes once filed, unless specifically dismissed as untimely filed).

The Louisiana Fifth Circuit denied the writ application on July 31, 2007, and is considered to have remained pending for an additional 30 days, until August 30, 2007, which was the time he had to file a timely writ application with the Louisiana Supreme Court, which he did not do.

The AEDPA filing period began to run again the next day, September 1, 2007, and did so for the remaining 247 days, until Monday, May 5, 2008,[44] when it expired. Fluker did not have any properly filed state post-conviction or other collateral review pending during that time period.

The Court recognizes that Fluker had two other state filings during that period, but neither filing was proper for purposes of AEDPA tolling. First, Fluker submitted an untimely application for rehearing to the Louisiana Fifth Circuit on August 15, 2007. Pursuant to La. App. Rule 4-9, the time for filing an application for rehearing from the denial of a post-conviction writ application is governed by La. App. Rule 2-18.2. The rule provides that, in criminal proceedings, a request for rehearing shall be filed within 14 days of the rendition of the judgment. In this case, the appellate court's ruling was issued on July 31, 2007, and Fluker had until August 14, 2007, to timely file a request for rehearing. Fluker did not sign his application for rehearing until August 15, 2007, which was one day after it already should have been submitted for filing under the applicable mailbox rule.

The precedent in this circuit would require only that tolling benefits be granted to timely filed applications for rehearing. *Accord*, *Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009) (addressing a timely filed application for rehearing under the Louisiana Supreme Court rules); *Hooks v. Quarterman*, 224 Fed. Appx. 352, 353 (5th Cir. 2007) (allowing tolling for timely filed application for rehearing without requiring that it be considered by the Texas court); *see also*, *Torns v. Miss.*, 54 Fed. Appx. 592, 2002 WL 31730353, at *1 (5th Cir. Nov. 22, 2002) (motion for rehearing did

---

[44]The period actually expired Saturday, May 3, 2008, and therefore falls to the following business day, Monday, May 5, 2008.

14

not warrant tolling because they were not "properly filed" under Mississippi state law).  The untimely application for rehearing did not interrupt or toll the AEDPA filing period which expired on May 5, 2008.

Fluker also thereafter submitted a writ application with the Louisiana Supreme Court which he signed on September 20, 2007.  Pursuant to La. S.Ct. Rule X§5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment under review or from the denial of a <u>timely</u> filed application for rehearing.  *Accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009).  In the prisoner context, the Court must also consider when the pleading was submitted to prison officials for mailing.  *See*, *Causey*, 450 F.3d at 601.  In this case, because Fluker's application for rehearing was not timely filed in the Louisiana Fifth Circuit, the time for filing ran from the appellate court's ruling on July 31, 2007.

Fluker's Louisiana Supreme Court writ application was signed by him on September 20, 2007, which is the earliest date he could have submitted the pleading to prison officials to mail to the Louisiana Supreme Court.  In addition, as noted previously, the envelope containing the application was postmarked on September 25, 2007, and it was filed by the clerk of court on October 11, 2007.  These dates are beyond the 30-day period allowed under La. S. Ct. Rule X§5.  A writ application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines.  *Butler v. Cain*, 533 F.3d 314, 318-319 (2008).  Fluker's Louisiana Supreme Court application did not interrupt or toll the AEDPA filing period which expired on May 5, 2008.

     **C.**     **Equitable Tolling**

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).  In this case, Fluker has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling, except to the extent it was discussed previously in connection with determining the finality of his conviction.[45]

Fluker's federal petition is deemed filed on November 17, 2008, which is over six months after the AEDPA filing period expired on May 5, 2008.  Fluker's federal petition must be dismissed as untimely filed.

## VI.   <u>Recommendation</u>

---

[45]Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner.  *See Holland*, 130 S. Ct. at 2549 (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

For the foregoing reasons, it is **RECOMMENDED** that Richard D. Fluker, Jr.'s petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[46]

New Orleans, Louisiana, this 18th day of January, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[46]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.